# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

**MALIBU MEDIA, LLC,**

                    **Plaintiff,**

-vs-                                              Case No.  **2:12-cv-425-FtM-99DNF**

**JOHN DOES 1-24,**

                    **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

  This cause is before the Court on the Defendant, John Doe#5's Motion for Protective Order, With Motion to Quash and Motion to Dismiss, and Motion to Reconsider its Order Granting Leave for Discovery (Doc.9) filed on October 9, 2012.   The Plaintiff, Malibu Media, LLC filed a Memorandum in Opposition to Doe 5's Motion for Protective Order, With Motion to Quash and Motion to Dismiss, and Motion to Reconsider Its Order Granting Leave for Discovery (Doc. 12) on October 10, 2012.

### I.  Background

  On August 6, 2012, the Plaintiff filed a Complaint for Copyright Infringement (Doc. 1) against twenty-four (24) John Doe Defendants (hereinafter "Defendants" or "Doe Defendants")  alleging direct copyright infringement in violation of 17 U.S.C. §§106 and 501; and contributory copyright infringement. (Com.[1] ¶2).

_____

  [1]  "Com." refers to the Complaint (Doc. 1).

The Plaintiff alleges that the acts of copyright infringement occurred using Internet Protocol ("IP") addresses, and each IP address was traced to a physical address located within the Middle District of Florida. (Com. ¶4).  The Plaintiff claims that each Defendant committed the tortious conduct set forth in the Complaint in the Middle District of Florida, and that each Defendant resides in the Middle District of Florida, or has engaged in continued and systematic business activity in the Middle District of Florida.  (Com. ¶4).  The Plaintiff contends that each Defendant was properly joined because each of the Defendants is jointly and severally liable for the infringing activities and each of the Defendants' activities was part of a series of transactions involving the same torrent file which contained pieces of Plaintiff's copyrighted work, and the infringing activity occurred when the Defendants acted in concert with each other.  (Com. ¶10).

The Plaintiff is the owner of the United States Copyright Registration Number PA0001794715 for the motion picture entitled "Yoga in the Sky" (the "Work"). (Com. ¶11). The Plaintiff alleges that each Defendant installed a Bit Torrent Client into his or her computer.  (Com. ¶16). The Plaintiff defines a "BitTorrent" as "one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data."  (Com. ¶14).  The BitTorrent protocol allows a large file to be distributed "without creating a heavy load on the source computer and network."  (Com. ¶15).  "[R]ather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a 'swarm' of host computers to download and upload from each other simultaneously (one computer connected to numerous computers)."  (Com. ¶15).  The Plaintiff explains that once the BitTorrent protocol is installed (and these software programs can be downloaded from the internet), the BitTorrent "'Client'

serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol." (Com. ¶17, 18).

The Plaintiff asserts that the Defendants uploaded a new file known as an "initial seeder" and started by creating a "torrent" descriptor using the Client he or she installed. (Com. ¶19). The Client "takes the target computer file, the 'initial seed,' here the subject website containing the copyrighted Work, and divides it into groups of bits known as 'pieces.'" (Com. ¶20). The Client then gives each one of the computer file's pieces, pieces of the Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers. (Com. ¶21). When another peer receives a piece, the hash identifiers are compared to test that they are error-free. (Com. ¶22). "In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted." (Com. ¶22).

The Torrent files have an "announce" section which specifies a URL (Uniform Resource Locator) of a "tracker". (Com. ¶23). The "tracker" is a computer or set of computers that a torrent file specifies and the torrent file then provides peers with the URL. (Com. ¶24). The tracker computer or computers direct a peer user's computer to other peer users' computers that have a particular piece of the file. (Com. ¶25). Torrent sites are websites that index torrent files that are available for copying and distribution through a BitTorrent protocol. (Com. ¶27). The Plaintiff alleges that each Defendant went to a torrent site and uploaded or downloaded the Work. (Com. ¶28). Once the initial seeder creates a torrent and uploads it to one or more torrent sites, then other peers can upload or download the computer file, in this case the Works using the BitTorrent protocol and Bit Torrent Client. (Com. ¶29). The BitTorrent protocol causes the initial seed's computer to send pieces of the file to peers seeking to download it. (Com. ¶30). Once a peer receives a piece of the file (here the Work), then

it starts transmitting that piece to other peers.  (Com. ¶31).  All of the peers and seeders working together are called a "swarm."  (Com. ¶32).

In this case, the Plaintiff alleges that each Defendant was a peer member in the same swarm and directly communicated with other members of the swarm through their computers uploading and downloading transmissions.  (Com. ¶33).  Once the peer receives all of the pieces of the file, the BitTorrent Client reassembles the pieces and the peer is able to view the Works.  (Com. ¶35).

The Plaintiff hired IPP, Limited to determine the IP addresses of the people using the BitTorrent protocol to reproduce, distribute, display or perform the Work.  (Com. ¶36).  IPP, Limited located the IP addresses associated with the peer-to-peer network, determined the unique hash value, and from this information the Plaintiff determined the IP addresses of the Defendants who allegedly participated in the infringement of the copyrighted work.  (Com. ¶37-39).  The Plaintiff learned that each of the Defendants' computers identified by their IP addresses were located in this District and transmitted a full copy or portion thereof of the digital media identified by the unique hash number. (Com. ¶40). IPP Limited also analyzed each BitTorrent piece distributed and verified that each IP address re-assembled the pieces using a BitTorrent Client.  (Com. ¶41).  In Count I, the Plaintiff alleges Direct Infringement against the Defendants, and in Count II the Plaintiff alleges Contributory Infringement against the Defendants.

The Plaintiff filed its Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference (Doc. 5) on August 21, 2012,  requesting that the Court allow it to serve subpoenas on ISPs to obtain the names, addresses, telephone numbers, e-mail addresses, and Media Access Control Addresses for the Doe Defendants.  The Court entered an Order (Doc. 6) on May 30, 2012 allowing the subpoenas to be served.

## II.  Analysis

At this point in the litigation, the Plaintiff has requested leave to serve Internet Service Providers with subpoenas to learn the identifying information concerning the Doe Defendants.  The issues of proper venue, and proper joinder are premature. After the Doe Defendants have been served, they may raise these issues.  *See, AF Holdings, LLC v. Does 1-162*, 2012 WL 488217, *4 (S.D. Fla. Feb. 14, 2012).  The Court will address the issue of whether John Doe #5 was properly notified, whether the Court should reconsider its Order, and whether the Plaintiff is seeking the information to force a settlement.

### A.  John Doe #5's Notification for the ISP Provider

John Doe #5 argues that the notice that was served on him pursuant to the subpoena was not valid.  John Doe #5 asserts that the notice did not provide sufficient information. Rule 45 governs a motion to quash a subpoena and provides that, "[o]n a timely motion, **the issuing court**" must or may quash or modify a subpoena that falls withing certain parameters.  FED. R. CIV. P. 45(c)(3)(A) and (B) (emphasis added).  In the instant case, the issuing court was United States District Court for the Eastern District of Virginia. The Middle District of Florida was not the issuing court for the subpoena. Bright House Networks is not subject to this Court's jurisdiction, and the Court lacks authority to quash the subpoena pursuant to Rule 45.  *See, Howard v. Hartford Life and Acc. Ins. Co.*, 2011 WL 2533800, *8 (M.D. Fla. June 27, 2011)*, AF Holding, LLC v. Does 1-162,* 2012 WL 488217, * 3 (S.D. Fla. Feb. 14, 2012), and *Boy Racer, Inc. v. John Does 1-34*, 2012 WL 1535703, *3 (S.D. Fla. May 1, 2012) (citations omitted).   Therefore, John Doe #5 must raise the issue of the defective notice in the District that issued the subpoena.

**B.  Reconsider Prior Order Allowing Subpoena to be Served**

John Doe #5 asserts that the Court should reconsider its Order (Doc. 6) which allowed the Plaintiff to serve subpoenas prior to the FED. R. CIV. P. 26(f) conference to learn the identities of the John Doe Defendants.  The Court found good cause to allow the Plaintiff to serve the third-party subpoenas.  The Plaintiff alleges that it holds a copyright to a motion picture and that though its forensic investigation it has determined potential infringement of its rights in the copyrighted work. The information sought is specific and the Plaintiff asserts that there is no other method to obtain the identities of the Doe Defendants.  John Doe #5 also asserts that the Work may not be subject to copyright protection.  This argument is premature, and may be addressed after the Defendants have been served.

A motion for reconsideration must demonstrate why the court should reconsider its prior decision and "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294 (M.D. Fla. 1993).  Reconsideration of a previous order is an extraordinary remedy.  *Ludwig v. Liberty Mutual Fire Insur. Co.*, 2005 WL 1053691 at *3 (M.D. Fla, 2005).  "A Court will not alter a prior decision absent a showing of clear and obvious error where 'the interest of justice' demand[s] correction."  *Prudential Securities, Inc. v. Emerson*, 919 F.Supp. 415 (M.D. Fla. 1996) (quoting *American Home Insurance Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985)).  The Court does not find that the prior Order (Doc. 6) contained a clear and obvious error.  Therefore, the Court finds that its prior Order (Doc. 6) should stand.

### C.  Force Settlement

John Doe #5 asserts that the Plaintiff is not obtaining his identifying information to pursue litigation but rather for the purpose of forcing John Doe #5 to settle this case before his personal information becomes public.  John Doe #5 claims that his right to privacy far outweighs any relevance as to his identity in this litigation.

When the discovery requested appears relevant on its face, then the party objecting to the discovery based upon relevance has the burden to show the requested discovery is not relevant. *Unlimited Resources, Inc. v. Deployed Resources, LLC*, 2009 WL 212188 at 3 (M.D. Fla. Jan. 29, 2009).  The scope of discovery is broad, however, the information must be relevant to a claim or defense, but need not be admissible at trial.  *Anglin*, 2009 WL 928305 at *2(citations omitted).

John Doe #5 has failed to show that the information sought is not relevant or reasonably calculated to lead to the discovery of admissible evidence.  The Plaintiff has no other way to discover the identities of the putuative Defendants other than by serving subpoenas on the Internet Service Providers. This information is essential to the prosecution of this litigation and is reasonably calculated to lead to the identities of the alleged infringers.  Therefore, the Court is persuaded that the information is relevant in this case.

John Doe #5  asserts that the information requested is personal or private to him and should not be disclosed, and this litigation is filed to embarrass and harass the Defendants.   A party does have standing to challenge a subpoena when the subpoena requests documents in which the party has a "personal right or privilege."  *Klima v. Carnival Corp.*, 2009 WL 1066969, *2 (S.D. Fla. April 21, 2009) (citations omitted).   The information that the Plaintiff is seeking was freely provided to ISPs and "[a]s courts have routinely held, 'Internet subscribers do not have a reasonable expectation of

privacy in subscriber information they have already conveyed to their [Internet Service Providers].'" *AF Holdings, LLC v. Does 1-162*, 2012 WL 488217, *4 (S.D. Fla. Feb. 14, 2012) (quoting *Doe v. S.E.C.*, 2011 WL 4593181, at *3 (N.D. Cal. Oct. 4, 2011)) (remaining citations omitted)). "'Additionally, an individual has no protected privacy interest in their name, address, phone number, e-mail address, or Media Access Control address when there is an allegation of copyright infringement.'" *Id*. (quoting *First Time Videos, LLC v. Does 1-18*, 2011 WL 4079177 at *1 (S.D. Ind. Sep. 13, 2011)). The Defendants' need to protect their names, addresses and telephone numbers is outweighed by the Plaintiff's need to obtain the information to prosecute this case. *Id*. at *4. The Court does not find merit in John Doe #5's argument concerning embarrassment or harassment. Other courts have held that the potential embarrassment that the defendants may face if their names are released and associated with this type of case is not grounds to allow them to proceed anonymously. *Id*. (citations omitted). Therefore, the Court finds that John Doe #5 has not met his burden to show standing for the Court to issue a protective order.

John Doe #5 asserts that the Plaintiff is only attempting to learn his identifying information to force him to settle this case before his name is disclosed. Therefore, John Doe #5 argues that the Plaintiff should be prevented from obtaining his identifying information. The Court does not find that it should make an exception under the Copyright Act for this type of case which contains materials that are pornographic. The Court is aware that there are real and legitimate concerns for potentially innocent Defendants especially if the Plaintiff is coercing settlements. Based upon John Doe #5 being represented by counsel, the Court is less worried that a settlement will be forced or coerced.

However, the Court is mindful of John Doe #5's concern that there is a possibility that he is an innocent customer and his IP address or wireless network may have been used by others to

download the Work.  The Court reviewed the Order (Doc. 25) entered on July 6, 2012 in Case No. 8:12-cv-669-T-23AEP by the Honorable Anthony E. Porcelli, United States Magistrate Judge concerning the same Plaintiff as in the instant case.  Judge Porcelli noted that FED. R. CIV. P. 11. provides for procedural safeguards to ensure that the Plaintiff proceeds in good. (See, Order, Doc. 25, p.7).  In that case, the Plaintiff "was amendable to keeping the names of the John Doe Defendants confidential in an effort to engage in good-faith discussions prior to identifying a John Doe Defendant as a named defendant in the lawsuit."  (Doc. 25, p. 7-8, in Case No. 8:12-cv-669-T-AEP).  The Court recommends that the Plaintiff follow this procedure in this case as well.

**IT IS RESPECTFULLY RECOMMENDED:**

1) John Doe #5's Motion to Dismiss (Doc. 9) be **DENIED** as premature, and the Motion for Protective Order, Motion to Quash, and Motion to Reconsider Its Order Granting Leave for Discovery be **DENIED**.

2) The  Plaintiff be required to notify the Doe Defendant, or his or her counsel if represented, of Plaintiff's intent to name and serve the Doe Defendant at least fourteen (14) days prior to seeking issuance of a summons from the Clerk for the identified Doe Defendant.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this \_\_\_\_15th\_\_\_\_ day of November, 2012.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record